**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ROBERT SNODGRASS, Individually and for Others Similarly Situated | **Case No.** _____ |
| v. | Jury Trial Demanded |
| BLUEGRASS NATURAL RESOURCES LLC | FLSA Collective Action<br>Rule 23 Collective Action |

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1.      Robert Snodgrass (Snodgrass) brings this class and collective action to recover unpaid wages and other damages from Bluegrass Natural Resources LLC. (Bluegrass).

2.      Bluegrass employed Snodgrass as one of its Hourly Employees (defined below) in Kentucky.

3.      Snodgrass and the other Hourly Employees regularly work more than 40 hours a workweek.

4.      However, Bluegrass does not pay Snodgrass and the other Hourly Employees for all their hours worked, including overtime hours.

5.      Rather, Bluegrass requires Snodgrass and the other Hourly Employees to suit out in protective clothing and safety gear necessary to perform their jobs and gather and prepare tools and equipment necessary to perform their jobs, while on Bluegrass's premises, "off the clock."

6.      Likewise, Bluegrass requires Snodgrass and the other Hourly Employees to change out of and store their safety gear and protective clothing, store their tools and equipment, and wash-up, while on Bluegrass's premises, "off the clock." (¶¶ 5-6 together, Bluegrass's "pre/post shift off the clock policy").

7. But Bluegrass does not pay Snodgrass and the other Hourly Employees for the time they spend donning and doffing their safety gear and protective clothing and washing-up, "off the clock," before and after their shifts.

8. Further, Bluegrass does not grant Snodgrass and the other Hourly Employees a reasonable time in which to take a lunch period, in violation of the Kentucky Wage and Hour Act (KWHA). K.R.S. § 337.355

9. And Bluegrass requires Snodgrass and the other Hourly Employees to work in excess of four hours without a rest period. K.R.S. § 337.365

10. Additionally, Bluegrass pays Snodgrass and the other Hourly Employees non-discretionary bonuses that it fails to include in their regular rates of pay for the purpose of calculating their overtime rates of pay (Bluegrass's "bonus pay scheme").

11. Bluegrass's pre/post shift off the clock policy and bonus pay scheme violate the Fair Labor Standards Act (FLSA) and Kentucky KWHA by failing to compensate Snodgrass and the other Hourly Employees at 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

## JURISDICTION & VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13. The Court has supplemental jurisdiction over the Kentucky state law claims pursuant to 28 U.S.C. § 1367 because they arise from the same common nucleus of operative facts as the FLSA claims asserted.

14. This Court has general personal jurisdiction over Bluegrass because it maintains its principal place of business in Illinois.

15. Venue is proper because Bluegrass maintains its principal place of business in Downers Grove, DuPage County, Illinois, which is in this District and Division. *See* 28 U.S.C. § 1391(b)(1).

## PARTIES

16. Bluegrass employed Snodgrass as a continuous miner operator from approximately October 2020 through December 2024.

17. Throughout his employment, Bluegrass subjected Snodgrass to its pre/post shift off the clock policy and bonus pay scheme.

18. Snodgrass's written consent is attached as **Exhibit 1**.

19. Snodgrass brings this class and collective action on behalf of himself and other Bluegrass employees on whom Bluegrass imposed its pre/post shift off the clock policy on and/or paid under its bonus pay scheme.

20. The FLSA Collective of similarly situated employees is defined as:

> **All hourly employees who worked for Bluegrass during the last three years (the "FLSA Collective Members").**

21. The putative Illinois class of similarly situated employees is defined as:

> **All hourly employees who worked for Bluegrass in Kentucky during the last three years (the "Kentucky Class Members").**

22. The FLSA Collective Members and the Kentucky Class Members are collectively referred to as the "Hourly Employees."

23. Bluegrass is a Delaware limited liability company with its principal place of business in Downers Grove, Illinois.

24. Bluegrass may be served with process through its registered agent: **CT Corporation System, 208 So. LaSalle St., Suite 814, Chicago, Illinois 37040**.

**FLSA COVERAGE**

25.     At all relevant times, Bluegrass was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

26.     At all relevant times, Bluegrass was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

27.     At all relevant times, Bluegrass was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, tools, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

28.     At all relevant times, Bluegrass had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

29.     At all relevant times, Snodgrass and the other Hourly Employees were Bluegrass's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

30.     At all relevant times, Snodgrass and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

**FACTS**

31.     "Bluegrass is a coal producer located in Southeastern Kentucky, and currently has 3 underground mines and a contract mine."[1]

32.     To meet its business objectives, Bluegrass employs workers, including Snodgrass and the other Hourly Employees, to mine and process coal.

---

[1] https://bluegrassnr.com/our-operations/mining-operations/ (last visited January 30, 2025).

33. For example, Bluegrass employed Snodgrass as a continuous miner operator from approximately October 2020 through December 2024 in its Tyree and Cold Iron Owl mines in Harlan County, Kentucky.

34. As a continuous miner operator, Snodgrass's job duties included operating the continuous mining machine to cut coal and then load coal onto shuttle cars or conveyor belts, as well as ensuring the continuous mining machine remained in good working order.

35. Snodgrass's job duties likewise included donning and doffing his safety gear and protective clothing and washing up, on Bluegrass's premises, before and after his scheduled shifts.

36. Throughout his employment, Bluegrass management "recorded" Snodgrass's "on the clock" hours via its timekeeping system.

37. Thus, Bluegrass's employment records reflect the number of "on the clock" hours Bluegrass "recorded" Snodgrass working each day and week.

38. Throughout his employment, Snodgrass regularly worked more than 40 hours a workweek.

39. Indeed, throughout his employment, Snodgrass typically worked 10 to 12 hours a day and 5 to 6 days a week (50 to 72 hours a workweek) "on the clock."

40. But throughout his employment, Bluegrass did not pay Snodgrass for all his hours worked.

41. Instead, throughout his employment, Bluegrass subjected Snodgrass to its pre/post shift off the clock policy.

42. Specifically, Bluegrass required Snodgrass to dress out in protective clothing and safety gear (including hard hat, head lamp, reflective clothing, ear plugs, steel toed boots, safety glasses, gloves, self-contained self-rescuer, respirator, proximity detector, and tracker) and gather and prepare tools and equipment, all "off the clock," and without compensation.

43. This took Snodgrass approximately 45 minutes to an hour each workday.

44. Snodgrass could not perform his job duties in accordance with Bluegrass's policies, procedures, and expectations without this protective clothing, safety gear, tools, and equipment.

45. Indeed, much of the gear Snodgrass utilized is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 75, *et seq*; 30 C.F.R. § 77, *et seq*.

46. The donning of protective clothing and safety gear and gathering other tools and equipment are therefore integral and indispensable work duties for Snodgrass.

47. Likewise, Bluegrass required Snodgrass to exit the mine, remove and store his safety gear and protective clothing and other gear, and wash up each day after his shift, all "off the clock" and without compensation.

48. This took Snodgrass approximately 45 minutes to an hour each workday.

49. Snodgrass could not perform his job duties in accordance with Bluegrass's policies, procedures, and expectations without removing and storing this safety gear and protective clothing, storing his tools and equipment, and washing up each workday.

50. Snodgrass could not safely perform his job duties in accordance with Bluegrass's policies, procedures, and expectations without removing and storing this safety gear and protective clothing and washing up each workday.

51. The removal and storage of safety gear and protective clothing, other tools and equipment, and washing up each day are therefore integral and indispensable work duties for Snodgrass.

52. But under its pre/post shift off the clock policy, Bluegrass did not compensate him for the same.

53. Thus, because of its pre/post shift off the clock policy, Bluegrass failed to pay Snodgrass overtime wages for all his overtime hours worked during workweeks Snodgrass worked in excess of 40 hours.

54. Furthermore, Bluegrass did not provide or make available meal periods to Snodgrass.

55. Bluegrass likewise never provided or made available rest periods to Snodgrass.

56. Rather, Bluegrass required Snodgrass to spend his entire workday working on behalf of Bluegrass for its primary benefit.

57. Snodgrass and the other Hourly Employees perform their jobs under Bluegrass's supervision and use materials, equipment, and technology Bluegrass approves and supplies.

58. Bluegrass requires Snodgrass and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

59. Snodgrass's and the other Hourly Employees' work must strictly adhere to the uniform standards put in place by Bluegrass.

60. At the end of each pay period, Snodgrass and the other Hourly Employees receive wages from Bluegrass that are determined by common systems and methods that Bluegrass selects and controls.

61. Likewise, the other Hourly Employees typically work 10 to 12 hours a day and 5 to 6 days a week (50 to 72 hours a week) "on the clock."

62. But, just as with Snodgrass, Bluegrass fails to pay them for all their hours worked.

63. Indeed, Bluegrass uniformly subjects the other Hourly Employees to the same or similar pre/post shift off the clock policy it imposed on Snodgrass.

64. Specifically, just as with Snodgrass, Bluegrass requires them to dress out in their protective clothing and safety gear (including hard hat, head lamp, reflective clothing, ear plugs, steel toed boots, safety glasses, gloves, self-contained self-rescuer, respirator, proximity detector, and

tracker), fundamentally necessary to performing their jobs and gather other tools and equipment, all "off the clock," and without compensation.

65. And Bluegrass requires them to exit the mine and remove and store their safety gear and protective clothing as well as other gear, and wash up after their shifts, likewise, "off the clock" and without compensation.

66. And like Snodgrass, much of the gear they must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 75, *et seq*; 30 C.F.R. § 77, *et seq*.

67. But, like Snodgrass, the other Hourly Employees are regularly forced to perform this compensable work "off the clock" before and after their shifts.

68. Thus, just as with Snodgrass, Bluegrass does not pay the other Hourly Employees for this integral and indispensable work they are required to perform "off the clock" before and after their scheduled shifts.

69. And, just as with Snodgrass, these job duties take the other Hourly Employees approximately an hour and a half to two hours to complete each workday.

70. And just as with Snodgrass, Bluegrass management "records" the other Hourly Employees "on the clock" hours.

71. And Bluegrass does not provide or make available meal periods to the other Hourly Employees.

72. Bluegrass likewise does not provide or make available 10-minute rest periods to the other Hourly Employees for each 4-hour period they work.

73. Rather, like Snodgrass, the other Hourly Employees spend their entire workdays working on behalf of Bluegrass for its primary benefit.

74. Bluegrass fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" on its premises that Bluegrass does not want performed.

75.    And Bluegrass knows, should know, or recklessly disregards whether Snodgrass and the other Hourly Employees routinely perform integral and indispensable work "off the clock," and without compensation, before and after their scheduled shifts for Bluegrass's primary benefit.

76.    Thus, Bluegrass requests, suffers, permits, or allows Snodgrass and the other Hourly Employees to work "off the clock," without compensation, before and after their scheduled shifts.

77.    Despite accepting the benefits, Bluegrass does not pay Snodgrass and the other Hourly Employees for the compensable work they perform "off the clock."

78.    Thus, under Bluegrass's uniform pre/post shift off the clock policy, Snodgrass and the other Hourly Employees are denied overtime wages for the compensable work they perform "off the clock" before and after their scheduled shifts during workweeks in which they work more than 40 hours.

79.    And throughout their employment, Bluegrass has not paid Snodgrass and the other Hourly Employees at the required premium rate for all hours worked in excess of 40 in a workweek.

80.    Instead, Bluegrass pays Snodgrass and the other Hourly Employees under its bonus pay scheme.

81.    Specifically, Bluegrass pays Snodgrass and the other Hourly Employees non-discretionary bonuses, including retention, safety, and production bonuses, that it fails to include in these employees' regular rates of pay for overtime purposes.

82.    For example, during the pay period ending June 23, 2024, Bluegrass paid Snodgrass production and safety bonuses it failed to include in his regular rate of pay for overtime purposes:

| Earnings | | | | |
|---|---|---|---|---|
| | Rate | Hours | Current | YTD |
| HOL | | | | 929.60 |
| OT | 45.15 | 15.50 | 699.83 | 16,565.39 |
| PTO | | | | 1,331.32 |
| Pro Bonus | | | 175.00 | 1,663.00 |
| REG | 30.10 | 40.00 | 1,204.00 | 30,071.30 |
| Ret Bonus | | | | 1,250.00 |
| Safe Bonu | | | 175.00 | 1,533.00 |
| **Gross Pay** | | | **2,253.83** | **53,343.61** |
| Hours Paid | | 55.50 | | |

83. Thus, under Bluegrass's bonus pay scheme, it does not pay Snodgrass and the other Hourly Employees overtime wages at the required rates—based on all remuneration—for all hours they work in excess of 40 a workweek.

84. The Hourly Employees are thus uniformly subject to the same or similar unlawful policies—Bluegrass's pre/post shift off the clock policy and bonus pay scheme—for similar work, in willful violation of the FLSA and KWHA.

**CLASS AND COLLECTIVE ACTION ALLEGATIONS**

85. Snodgrass brings his claims as a class and collective action under Section 216(b) of the FLSA on behalf of himself and the other Hourly Employees and under the KWHA pursuant to Fed. R. Civ. P. 23.

86. Like Snodgrass, the other Hourly Employees are victimized by Bluegrass's pre/post shift off the clock policy and bonus pay scheme.

87. Other Hourly Employees worked with Snodgrass and indicated they were paid in the same manner, performed similar work, and were subject to Bluegrass's same pre/post shift off the clock policy and bonus pay scheme.

88. Based on his experience with Bluegrass, Snodgrass is aware Bluegrass's pre/post shift off the clock policy and bonus pay scheme were imposed on other Hourly Employees.

89. The Hourly Employees are similarly situated in the most relevant respects.

90. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime wages at the required premium rate for all overtime hours worked.

91. Therefore, the specific job titles or job locations of the Hourly Employees do not prevent class or collective treatment.

92. Rather, Bluegrass's pre/post shift off the clock policy and bonus pay scheme render Snodgrass and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rate for all overtime hours worked.

93. Bluegrass's records reflect the number of "on the clock" hours the Hourly Employees were "recorded" as working each week.

94. Bluegrass's records also show it paid the Hourly Employees non-discretionary bonuses it failed to include in their regular rates of pay.

95. The back wages owed to Snodgrass and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

96. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Bluegrass's records, and there is no detraction from the common nucleus of liability facts.

97. Therefore, the issue of damages does not preclude class or collective treatment.

98. Snodgrass' experiences are therefore typical of the experiences of the other Hourly Employees.

99. Snodgrass has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

100. Like each Hourly Employee, Snodgrass has an interest in obtaining the unpaid wages owed under federal and Kentucky law.

101.    Snodgrass and his counsel will fairly and adequately protect the interests of the Hourly Employees.

102.    Snodgrass retained counsel with significant experience in handling complex class and collective action litigation.

103.    Absent this collective action, many Hourly Employees will not obtain redress for their injuries, and Bluegrass will reap the unjust benefits of violating the FLSA and KWHA.

104.    Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

105.    Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and Bluegrass.

106.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

107.    The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

108.    Among the common questions of law and fact are:

      a.    Whether Bluegrass imposed its pre/post shift off the clock policy on the Hourly Employees;

      b.    Whether Bluegrass's pre/post shift off the clock policy deprived the Hourly Employees of overtime compensation for overtime hours worked;

      c.    Whether Bluegrass paid the Hourly Employees non-discretionary bonuses;

d. Whether Bluegrass engaged in a policy or practice of failing to include non-discretionary bonuses in the Hourly Employees' regular rates of pay for the purpose of calculating overtime;

e. Whether Bluegrass failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked;

f. Whether Bluegrass failed to provide meal and/or rest periods as required by the KWHA;

g. Whether Bluegrass's decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration—for all overtime hours worked was made in good faith; and

h. Whether Bluegrass's violations were willful?

109. As part of its regular business practices, Bluegrass intentionally, willfully, and repeatedly violated the FLSA and KWHA with respect to Snodgrass and the other Hourly Employees.

110. Bluegrass's pre/post shift off the clock policy and bonus pay scheme deprived Snodgrass and the other Hourly Employees of the overtime wages at the required premium rate—based on all remuneration—for overtime hours worked, in willful violation of the FLSA and KWHA.

111. There are many similarly situated Hourly Employees who have been denied overtime pay at the required rate—based on all remuneration—for all overtime hours worked, in violation of the FLSA, who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

112. The Hourly Employees are known to Bluegrass, are readily identifiable, and can be located through Bluegrass's business and personnel records.

**BLUEGRASS'S VIOLATIONS WERE WILLFUL**

113. Bluegrass knew it employed the Hourly Employees.

114. Bluegrass knew it was subject to the FLSA's and KWHA's overtime provisions.

115. Bluegrass knew Snodgrass and the other Hourly Employees were its non-exempt employees entitled to overtime pay.

116. Bluegrass knew the FLSA required it to pay non-exempt employees, including Snodgrass and the other Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek.

117. Bluegrass knew Snodgrass and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because Bluegrass recorded their "on the clock" hours via its timekeeping system.

118. Bluegrass knew it paid the Hourly Employees according to its pre/post shift off the clock policy.

119. Bluegrass knew it had a duty to ensure the Hourly Employees were not performing work "off the clock" (without pay).

120. Bluegrass knew it required the Hourly Employees to don and doff safety gear and protective clothing, gather and store other tools and equipment, and wash-up, "off the clock."

121. Bluegrass knew it controlled the Hourly Employees' work procedures.

122. Bluegrass knew the Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs with Bluegrass.

123. Bluegrass knew the Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement to their principal job duties with Bluegrass.

124. Bluegrass knew the Hourly Employees routinely performed this daily, required "off the clock" work for Bluegrass's predominant benefit.

125. In other words, Bluegrass knew the Hourly Employees performed compensable work (*e.g.*, donning/doffing their safety gear and protective clothing, gathering and storing other tools and equipment, and washing-up) "off the clock" and without compensation.

126. Bluegrass further knew the KWHA required it to provide meal and rest periods to the Hourly Employees.

127. And Bluegrass knew it did not provide the Hourly Employees with meal and/or rest breaks.

128. Bluegrass knew it paid Snodgrass and the other Hourly Employees non-discretionary bonuses.

129. Bluegrass knew these non-discretionary bonuses were not included in Snodgrass' and the other Hourly Employees' regular rates of pay for the purpose of calculating their overtime rates of pay.

130. And Bluegrass knew the FLSA and KWHA required it to pay Snodgrass and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

131. Bluegrass knew Snodgrass and the other Hourly Employees regularly worked in excess of 40 hours a workweek.

132. Thus, Bluegrass knew, should have known, or recklessly disregarded whether it failed to pay Snodgrass and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all the hours they worked in excess of 40 a workweek.

133. Bluegrass's failure to pay Snodgrass and the other Hourly Employees overtime at the required rates—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

134. Bluegrass knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful bonus pay scheme and pre/post shift off the clock policy that deprived Snodgrass and the other Hourly Employees of overtime wages at the required rate of pay—based on all remuneration— for all hours worked after 40 a workweek, in violation of the FLSA.

## COUNT I

### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

135. Snodgrass brings his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

136. Bluegrass violated, and is violating, the FLSA by employing non-exempt employees, such as Snodgrass and the other FLSA Collective Members, in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

137. Bluegrass's unlawful conduct harmed Snodgrass and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

138. Accordingly, Bluegrass owes Snodgrass and the other FLSA Collective Members the difference between the wages actually paid and the overtime wages actually earned.

139. Because Bluegrass knew, or showed reckless disregard for whether its bonus pay scheme and pre/post shift off the clock policy violated the FLSA, Bluegrass owes Snodgrass and the other FLSA Collective Members these wages for at least the past 3 years.

140. Bluegrass is also liable to Snodgrass and the other FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

141. Finally, Snodgrass and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE KWHA
### (KENTUCKY CLASS)

142. Snodgrass brings his KWHA claim on behalf of himself and the other Kentucky Hourly Workers pursuant to Fed. R. Civ. P. 23.

143. Bluegrass's conduct violates the KWHA. K.R.S. § 337.010, *et seq.*

144. At all relevant times, Bluegrass was subject to the KWHA because Bluegrass was (and is) an "employer" within the meaning of the KWHA. K.R.S. § 337.010(1)(d).

145. At all relevant times, Bluegrass employed Snodgrass and the other Kentucky Class Members as its covered "employees" within the meaning of the KWHA. K.R.S. § 337.010(1)(e).

146. The KWHA requires employers, like Bluegrass, to pay non-exempt employees, like Snodgrass and the other Kentucky Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked over 40 in a workweek. K.R.S. § 337.385.

147. Snodgrass and the other Kentucky Class Members are entitled to overtime wages under the KWHA.

148. And the KWHA requires employers, like Bluegrass, to provide employees, like Snodgrass and the other Kentucky Class Members, with meal and rest periods. K.R.S. §§ 337.355 and 337.365.

149. But Bluegrass did not provide or make available meal or rest periods to Snodgrass and the other Kentucky Class Members.

150. Bluegrass violated, and is violating, the KWHA by employing non-exempt employees, Snodgrass and the other Kentucky Class Members, for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—

based on all remuneration—for all hours worked after 40 in a workweek, including hours worked "off the clock." *See* K.R.S. § 337.385.

151. Bluegrass's unlawful conduct harmed Snodgrass and the other Kentucky Class Members by depriving them of the overtime wages they are owed.

152. Accordingly, Bluegrass owes Snodgrass and the other Kentucky Class Members the difference between the overtime wages actually paid and the required overtime wages actually earned for at least the last three years. *See* K.R.S. § 337.385(1).

153. In violating the KWHA, Bluegrass acted without a good faith basis and without reasonable grounds for believing its acts and omissions were not violative of clearly applicable Kentucky law.

154. Thus, Bluegrass is also liable to Snodgrass and the other Kentucky Class Members for an additional amount equal to all unpaid wages as liquidated damages. *See* K.R.S. § 337.385(1).

155. Finally, Snodgrass and the other Kentucky Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action. *See* K.R.S. § 337.385(1).

## JURY DEMAND

156. Snodgrass demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Snodgrass, individually and on behalf of the other Hourly Employees, seeks the following relief:

   a. An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

   b. An Order certifying a class action pursuant to Fed. R. Civ. P. 23;

c. An Order appointing Snodgrass and his counsel to represent the interests of the Kentucky Class Members;

d. An Order finding Bluegrass liable to Snodgrass and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding Bluegrass liable to Snodgrass and the other Kentucky Class Members for all unpaid wages owed under the KWHA, plus liquidated damages in an amount equal to their unpaid wages;

f. Judgment awarding Snodgrass and the other Hourly Employees all unpaid wages, liquidated damages, statutory damages, and any other penalties available under the FLSA and KWHA;

g. An Order awarding attorneys' fees, costs, and expenses;

h. An Order awarding pre- and post-judgement interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

Dated: January 31, 2025

Respectfully submitted,

/s/ *Douglas M. Werman*
One of Plaintiff's Attorneys

Douglas M. Werman
dwerman@flsalaw.com
Maureen A. Salas
msalas@flsalaw.com
**WERMAN SALAS P.C.**
77 West Washington St., Suite 1402
Chicago, Illinois 60602
Phone: (312) 419-1008
Fax: (312) 419-1025

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:     (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:     (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR SNODGRASS &
THE HOURLY EMPLOYEES**

- 20 -